IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBBIE HEVERLING,** *et al.*, | : | CIVIL ACTION NO. 1:16-CV-600 |
| Plaintiffs | : | (Chief Judge Conner) |
| v. | : | |
| **MCNEIL CONSUMER PHARMACEUTICALS, CO./FORT WASHINGTON, PA.,** *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiffs Robbie Heverling ("Heverling") and Nathan Hess ("Hess") commenced this action against defendant McNeil Consumer Pharmaceuticals, Co. ("McNeil").[1]  Plaintiffs allege that McNeil fostered a hostile work environment and retaliated against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Pennsylvania Human Relations Act ("PHRA"). 43 Pa. Stat. & Cons. Stat. Ann. §§ 951-963.  Plaintiffs also advance a state common law claim for wrongful termination.  (Doc. 1).  McNeil moves to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 12).  The court will grant the motion.

I.      **Factual Background & Procedural History**

McNeil is a corporation which manufactures pharmaceutical drugs.  (Doc. 1 ¶¶ 3, 5).  McNeil employed plaintiffs as processing associates at McNeil's plant in

---

[1] McNeil asserts that plaintiffs erroneously designated McNeil's identity as "McNeil Consumer Pharmaceuticals" in their complaint.  (See Doc. 1; Doc. 16 at 1). To the extent McNeil is correct, plaintiffs shall endeavor to identify the proper corporate entity in any amended pleading to be filed.

Lancaster, Pennsylvania. (Id. ¶¶ 12-13). During the entire course of plaintiffs' employment, the Food and Drug Administration ("FDA") subjected McNeil to a consent decree which required McNeil to adhere to certain quality control and manufacturing standards. (Id. ¶ 14). Between January 2015 and May 2015, plaintiffs observed that management at the Lancaster plant consistently violated the consent decree and did not satisfy the FDA's Good Manufacturing Practices. (Id. ¶¶ 17-22). Plaintiffs specifically note that the plant's management allowed them to use contaminated tools and equipment in violation of FDA requirements. (Id. ¶ 17). Plaintiffs also aver that McNeil's management engaged in improper record keeping and that their shift supervisor failed to properly inspect plaintiffs' workplace for cleanliness and quality control. (Id. ¶¶ 18-22).

Plaintiffs brought these issues to their shift supervisor. (Id. ¶¶ 23-24). Plaintiffs also approached two other shift supervisors about these problems. (Id. ¶¶ 25-30). None of the supervisors alleviated plaintiffs' concerns. (Id.) In May 2015, one of the machines at the plant malfunctioned, causing a batch of contaminated product to leave the facility. (Id. ¶ 31). Plaintiffs reported this incident to their supervisors. (Id. ¶ 32).

Plaintiffs allege that McNeil initiated a Title VII investigation "nearly immediately after the aforementioned complaints were made." (Id. ¶ 33). McNeil interviewed most of the male employees in plaintiffs' shift during the investigation. (Id. ¶ 34). Investigators asked plaintiffs and others whether they ridiculed another male employee using sexually-charged language. (Id. ¶ 35). During his interview, Hess indicated that he never teased male employees in his shift. (Id. ¶ 36).

2

Heverling told an investigator that he did tease other male employees in his shift, but that other male employees engaged in similar behavior and he never singled out the specific employee in question. (Id. ¶ 37). Both Hess and Heverling stated that other male employees in their shift subjected them to homophobic slurs. (Id. ¶ 39). Plaintiffs allege that "[a]s a result of . . . their participation in the Title VII investigation," McNeil terminated them from employment on June 25, 2015. (Id. ¶ 40). Both plaintiffs received termination letters indicating that the reason for their terminations, *inter alia*, was inappropriate behavior towards other employees. (Id. at 16, 18). Plaintiffs contend that McNeil had "two primary motivations" for terminating their employment. (Id. ¶ 41). Plaintiffs cite "their reporting of sexual and homophobic slurs during the Title VII investigation[]" as well as their repeated complaints about McNeil's failure to adhere to the FDA's regulations and required practices. (Id.)

Plaintiffs filed charges with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission on October 18, 2015. (Docs. 16-1, 16-2). The EEOC sent plaintiffs right-to-sue letters on January 12, 2016. (Doc. 1 at 14-15). Plaintiffs filed the instant complaint (Doc. 1) on April 11, 2016. Therein, they allege a hostile work environment claim, Title VII and PHRA retaliation claims, and a state law wrongful termination claim. (Id. ¶¶ 44-75). McNeil filed the instant motion (Doc. 12) to dismiss on June 13, 2016. The motion is fully briefed and ripe for disposition.

3

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once

4

the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III. Discussion

McNeil asseverates that plaintiffs' allegations, even accepted as true, fail to establish an entitlement to relief under Title VII, the PHRA, and Pennsylvania common law. The court will consider McNeil's arguments *seriatim*.

### A. Hostile Work Environment

McNeil submits that plaintiffs' hostile work environment claim is barred for failure to exhaust administrative remedies. To initiate a hostile work environment claim under Title VII, a plaintiff must first file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(b), (e)(1). A complainant must file a charge within 180 days after an allegedly unlawful employment practice occurs. Id. § 2000e-5(e)(1). This deadline extends to 300 days if a complainant files charges in a state, such as

5

Pennsylvania, with a parallel agency which may grant relief to complainants who suffer discriminatory employment practices. Id.; Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013). The EEOC must then investigate the charges. Burgh v. Borough Council, 251 F.3d 465, 469-70 (3d Cir. 2001) (citations omitted). If the EEOC fails to resolve the matter within 180 days, the EEOC notifies the complainant with a right-to-sue letter. Id. at 470 (citing Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984)). Receipt of a right-to-sue letter is a prerequisite to filing a private Title VII action. Id. (citations omitted). A complainant must file a private action within 90 days of receiving a right-to-sue letter. Id. (citing 42 U.S.C. § 2000e-5(f)(1)).

The breadth of the complainant's private action is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). In determining whether a claim is contemplated in an EEOC charge, courts liberally interpret the administrative filing. Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (quoting Hicks, 572 F.2d at 965). Courts should construe EEOC charges as meeting exhaustion requirements if they contain terms that are interchangeable with those commonly used in hostile work environment charges, such as "'abusive,' 'hostile,' 'environment,' and 'atmosphere.'" Id. at 94-95 (citations omitted).

McNeil contends that plaintiffs failed to exhaust administrative remedies because their EEOC charges do not contemplate hostile work environment claims. (Doc. 16 at 8-9). Both Heverling and Hess timely submitted charges to the EEOC

and Pennsylvania Human Relations Commission, and both received right-to-sue letters prior to filing suit in district court. (Doc. 1 at 14-15; Doc. 16-1 at 2; Doc. 16-2 at 2). Heverling and Hess alleged only retaliation in their administrative charges—neither checked the box on the EEOC form indicating they intended to advance sex discrimination charges such as the hostile work environment claims asserted herein. (Doc. 16-1 at 2; Doc. 16-2 at 2). Nor do plaintiffs' EEOC filings describe a hostile work environment or sex discrimination in the space the form provided for elaboration. (Doc. 16-1 at 2; Doc. 16-2 at 2).

Plaintiffs assert that their EEOC charges reflect an intent to pursue hostile work environment claims because they referred to a "harassment investigation" in their agency filings. (See Doc. 16-1 at 2; Doc. 16-2 at 2; Doc. 21-1 at 8-11). The EEOC charges, even when liberally construed, exclude any claim *by plaintiffs* of a hostile work environment. *Per contra*, the charges assert that McNeil initiated a duplicitous harassment investigation as pretext to terminate plaintiffs. (Doc. 16-1 at 2; Doc. 16-2 at 2). Plaintiffs' agency filings are devoid of any reference which could be reasonably interpreted as asserting personal hostile work environment claims. The court cannot construe the language of the charges to evince any claim beyond retaliatory termination. The court will grant McNeil's motion to dismiss plaintiffs' hostile work environment claims.

**B.     Title VII and PHRA Retaliation**

McNeil's motion next tests the sufficiency of plaintiffs' retaliation claims.[2] Title VII protects employees who have "opposed any practice made an unlawful employment practice" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* claim of retaliation, plaintiffs must show that: (1) they engaged in protected activity; (2) their employer took an adverse employment action against them; and (3) there was a causal nexus between their participation in protected activity and the adverse employment action. See Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995)). McNeil's Rule 12 arguments concern only the first and third elements. (See Doc. 16 at 10-14).

McNeil adjures that plaintiffs have not alleged that they engaged in activity protected by Title VII. (See id. at 10-13). Specifically, McNeil remonstrates that its "internal" investigation is not protected activity within the ambit of Title VII. (Id.) Courts are generally in accord that participation in an internal investigation is not statutorily protected activity. Washco v. Fed. Express Corp., 402 F. Supp. 2d 547, 554-55 (E.D. Pa. 2005) (collecting cases). But plaintiffs' complaint unambiguously characterizes the activity in question as a "Title VII investigation." (Doc. 1 ¶¶ 33-43,

---

[2] Courts construe the language of the PHRA identically to federal anti-discrimination laws "except where there is something especially different" in the language of the PHRA. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted). The parties have not identified any material difference between the relevant statutes *sub judice*. (See Doc. 16 at 10 n.8). Accordingly, the disquisition that follows applies to plaintiffs' retaliation claims under both statutes.

8

59-64). Accepting plaintiffs' allegations as true, the complaint adequately avers that plaintiffs participated in "protected activity."[3]

McNeil also contends that plaintiffs cannot satisfy Title VII's causation standard. To establish causation for a retaliation claim, plaintiffs must show that their participation in protected activity was a "but-for" cause of their adverse employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. __, 133 S. Ct. 2517, 2533 (2013). This exacting standard requires plaintiffs to demonstrate that the adverse action "would not have occurred" absent the alleged wrongful retaliation. Id. Accordingly, when a plaintiff sets forth two (or more) grounds for an adverse employment action, only one of which is statutorily protected, the plaintiff cannot satisfy Title VII's causation requirement. See, e.g., Burton v. Pa. State Police, 990 F. Supp. 2d 478, 510-11 (M.D. Pa. 2014).

Plaintiffs expressly identify "*two* primary reasons" for their terminations: (1) participation in the Title VII investigation and (2) reporting noncompliance with the FDA consent decree. (Doc. 1 ¶ 41 (emphasis added)). Plaintiffs' *allegata* are thus logically incompatible with but-for causation. Having themselves alleged an alternative basis for the adverse employment action, plaintiffs cannot show that their protected activity was the but-for cause of their terminations. See Nassar, 133 S. Ct. at 2533; see also Burton, 990 F. Supp. 2d at 510-110. The court will dismiss plaintiffs' retaliation claim.

---

[3] The alternative reason that plaintiffs proffer for their termination—that McNeil retaliated against them for reporting violations of the FDA's consent decree—falls outside the purview of Title VII. See 42 U.S.C. § 2000e-2(a).

9

### C. Wrongful Termination

McNeil asserts that the court must dismiss plaintiffs' wrongful termination claim because the complaint does not establish a violation of Pennsylvania public policy. (See Doc. 16 at 14-16). Under Pennsylvania law, employers may terminate employees "for any or no reason" unless the employee is subject to an employment agreement. Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998) (quoting Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974)). The Pennsylvania Supreme Court, however, has carved an exception to the at-will employment doctrine: employees may bring wrongful termination claims when their termination "would violate a 'clear mandate of public policy.'" McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 313 (Pa. 2000) (quoting Geary, 319 A.2d at 180). The exception applies only when the Pennsylvania legislature formulates a public policy or "a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." Weaver v. Harpster, 975 A.2d 555, 563 (Pa. 2009) (quoting Mamlin v. Genoe, 17 A.2d 407, 409 (Pa. 1941)).

Plaintiffs aver that McNeil terminated their employment in "retaliation for complaining about their supervisor's failure to adhere to FDA regulations and Good Manufacturing Practices." (Doc. 21-1 at 14). The Pennsylvania Supreme Court has made clear that "a bald reference to a violation of a federal regulation" will not bring a claim within the scope of the state's public policy exception. McLaughlin, 750 A.2d at 320. Rather, a plaintiff must demonstrate specifically that the "public policy *of the Commonwealth* is implicated." Id. (emphasis added). Plaintiffs make

10

no such showing. The court will accordingly grant McNeil's motion and dismiss plaintiffs' wrongful termination claim.

### D.  Leave to Amend

The flaws identified in plaintiffs' retaliation and wrongful termination claims are principally factual. The court harbors some doubt concerning plaintiffs' ability to resurrect these claims; nonetheless, we can envision certain facts which might resolve the present defects therein. Accordingly, the court will grant plaintiffs leave to amend their retaliation and wrongful termination claims to endeavor to cure the deficiencies identified in this memorandum. See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108.

Plaintiffs' hostile work environment claims, however, must be dismissed without leave to amend. McNeil terminated plaintiffs on June 25, 2015. (Doc. 1 ¶ 40). The 300-day deadline for filing charges with the EEOC expired on April 20, 2016, foreclosing the filing of new charges at this juncture. See 42 U.S.C. § 2000e-5(e)(1). Amendment would thus be futile. The court will dismiss plaintiffs' hostile work environment claims with prejudice.

## IV.  Conclusion

For the foregoing reasons, the court will grant McNeil's motion (Doc. 12) to dismiss plaintiffs' complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER  
Christopher C. Conner, Chief Judge  
United States District Court  
Middle District of Pennsylvania

Dated:  February 23, 2017